IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO BATTON,<br><br>      Petitioner,<br><br>  vs.<br><br>DANIEL PARAMO, Warden, Richard J.<br>Donovan Correctional Facility,[1]<br><br>      Respondent. | No. 2:16-cv-00762-JKS<br><br>MEMORANDUM DECISION |

  Mario Batton, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Batton is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the Richard J. Donovan Correctional Facility. Respondent has answered, and Batton has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On February 9, 2010, Batton was charged with first-degree residential burglary (Count 1) and resisting a police officer in the performance of his duties (Count 2). The information additionally alleged that Batton's prior convictions for first-degree burglary on October 25, 1984, and September 10, 2001, were both serious felonies and strike priors. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Batton and the evidence presented at trial:

> This was [Batton's] second trial on these charges. The first jury found him guilty, but the court granted a new trial based on a juror's misconduct in failing to disclose information during voir dire.

---

  [1]  Daniel Paramo, Warden, Richard J. Donovan Correctional Facility, is substituted for Christian Pfeiffer, Warden, Kern Valley State Prison. FED. R. CIV. P. 25(c).

On January 15, 2010, around 10:45 a.m., sheriff's deputies responded to a report of a possible burglary in progress at a duplex. A deputy stationed in front of the house saw someone inside look out through the window blind and then heard a loud noise inside the house. The deputy stationed in back of the house heard the loud noise and saw two males, later identified as [Batton] and Demetrius Wilkerson, run out of the back of the duplex into the backyard and over a fence. They ignored law enforcement orders to stop, and deputies took chase. Deputies quickly caught Wilkerson in a neighboring yard a few doors away. A few minutes later, a police dog located [Batton] hiding in a backyard.

In [Batton's] pocket, deputies found a woman's watch plus gold and silver watch faces. Wilkerson had a Cannon digital camera and a small Sony PSP Play Station. The victim identified these items as her property. The victim's home had been ransacked—drawers, cabinets, and closets emptied; items strewn about; and the television had been pulled off the wall. No useable fingerprints were found.

The victim did not know [Batton] but had dated Wilkerson's brother a couple of years earlier. Wilkerson subsequently entered a plea to an unspecified charge.

[Batton] testified at trial. On the day in question, he was living with Shannon Brown, who was his fiancée at the time, and her son at the home of Brown's godmother. [Batton] had recently moved from Orange County and had been introduced to Wilkerson through Brown. [Batton] was 48 years old, and Wilkerson was around 18 or 19. [Batton] said he and Wilkerson were just acquaintances, not friends.

Around 7:00 a.m. on the day of the burglary, Wilkerson came to [Batton's] home and said he (Wilkerson) and his girlfriend had split up. [Batton] asked Wilkerson to come back later. Wilkerson later returned, related his girlfriend problem to [Batton] and Brown, and asked Brown if it would be alright if [Batton] helped retrieve Wilkerson's property from the girlfriend's house.

[Batton] and Wilkerson walked to the duplex a few blocks away. Wilkerson appeared to try to open the door with a key, said, "My bitch locked me out," and entered the gated yard. [Batton] stayed out front for several minutes, then got impatient and went into the backyard. Wilkerson opened the sliding glass door and handed [Batton] the watch and watch faces. [Batton] put them in his pocket and said to hurry because he had other things to do. Wilkerson went back inside. [Batton] stayed outside.

After a few minutes, [Batton] heard a crashing sound, which he thought was Wilkerson running through the house. [Batton] heard a screeching sound and saw police cars. Wilkerson ran out the back door, at which point [Batton] "figured" Wilkerson had done something wrong and "had got me caught up in some stuff." [Batton] heard the deputies announce the police dog. He had previously been bitten by a dog. He waited for the deputies to find him.

[Batton] admitted he committed, pleaded guilty, and was convicted of residential burglary in 1984 and 1999 and second-degree burglary in 2004. The jury also heard the parties' stipulation that [Batton] was convicted of residential burglary in 1984 and 1999. (The record indicates [Batton] was granted probation in 1999 but violated probation and was committed to prison in 2001.)

2

> On cross-examination, [Batton] said he had not called or talked with Brown in months and did not know her new phone number. Brown was on the witness list as a defense witness but ultimately did not testify at trial.
> In rebuttal, the prosecution adduced evidence of Brown's phone number and that [Batton] phoned it from jail about 25 or 30 times in the two weeks before the trial, once as recently as the day [Batton] testified.
> In his initial closing argument to the jury, the prosecutor did not mention the absence of Brown from the witness stand. The prosecutor highlighted [Batton's] lies on the witness stand about not knowing Brown's phone number and not having contact with her. The prosecutor argued [Batton] committed a new crime—perjury—and the jury should disbelieve his entire testimony.
> Defense counsel argued to the jury that there was no evidence of the length of the calls or whether they were accepted. Defense counsel acknowledged Brown would have been a logical and natural witness, but the defense did not have the burden, and the jurors could not speculate as to why witnesses are called or not called.
> In rebuttal argument, the prosecutor said the jurors could consider Brown's absence. The trial court overruled a defense objection. The prosecutor continued, "Ms. Brown is not here. She did not testify. And so her—you know, [Batton] talking about Ms. Brown heard this, Ms. Brown heard that. [Defense counsel], in his opening statement, talking about Ms. Brown's going to tell you this and that. It never happened." The trial court overruled a defense objection of burden-shifting.

*People v. Batton*, No. C072081, 2015 WL 7307330, at *1-2 (Cal. Ct. App. Nov. 5, 2015).

At the conclusion of trial, the jury found Batton guilty of both Counts 1 and 2. The court held a bifurcated trial on the enhancement allegations and further found true the prior allegations. The court subsequently sentenced Batton to an aggregate term of 18 years' imprisonment.

Through counsel, Batton appealed his conviction, arguing that: 1) the trial court abused its discretion and violated Batton's Fifth Amendment right against self-incrimination by overruling his objection to the prosecutor's cross-examination and by allowing collateral rebuttal testimony; 2) the trial court abused its discretion and deprived Batton of due process and a fair trial by admitting two prior convictions for residential burglary; 3) the prosecutor committed misconduct by questions and argument going to propensity and bad character; and 4) the

3

cumulative effect of the errors warranted reversal of his conviction. The Court of Appeal unanimously affirmed the judgment against Batton in all respects in a reasoned, unpublished opinion issued on November 20, 2015. *Batton*, 2015 WL 7307330, at *10. Batton petitioned the California Supreme Court for review of all claims, which was denied without comment on January 27, 2016.

Batton then timely filed an undated *pro se* Petition for a Writ of Habeas Corpus to this Court, which was docketed on April 14, 2016. *See* 28 U.S.C. § 2244(d)(1)(A). A previously-assigned magistrate judge dismissed the petition with leave to amend. Docket No. 6. Batton filed the First Amended Petition ("Petition") at Docket No. 9, which is now pending before the undersigned judge and ripe for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Batton raises the claims he unsuccessfully raised to the state courts on direct appeal. First, he argues that the trial court abused its discretion and violated Batton's Fifth Amendment right against self-incrimination by overruling his objection to the prosecutor's cross-examination and by allowing collateral rebuttal testimony regarding his contact with Brown. He next contends that the trial court abused its discretion and deprived Batton of due process and a fair trial by admitting his two prior convictions for residential burglary. In Ground 3, Batton avers that the prosecutor committed misconduct by asking questions and making arguments that went to propensity and bad character. Finally, Batton claims that the cumulative effect of the errors warrants reversal of the judgment.

4

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary

5

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A. *Evidentiary Errors* (Grounds 1, 2)

Batton first argues that the trial court made two evidentiary errors by: 1) allowing evidence and testimony regarding Batton's recent contacts with Brown; and 2) admitting prejudicial prior crimes evidence. The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973);

6

*Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

The erroneous admission of evidence does not provide a basis for federal habeas relief unless it rendered the trial fundamentally unfair in violation of due process. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (emphasis omitted). A writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002), *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000).

   i. Questions and evidence regarding Batton's contacts with Brown

In considering this claim on direct appeal, the Court of Appeal laid out the following factual background to this claim:

> [Batton] complains the trial court improperly allowed the prosecution to cross-examine him about post-arrest communications with Brown and to present collateral rebuttal evidence about such contacts, which [Batton] views as beyond the scope of his direct examination. [Batton] argues the trial court abused its discretion and violated his Fifth Amendment right to remain silent and his Fourteenth Amendment right to due process of law and a fair trial.
>  According to [Batton], Brown was a witness to Wilkerson asking for help to retrieve his property from his girlfriend's house.
>  Brown did not testify at the first trial but was present as a spectator. After the verdict, she claimed a juror had passed her a note, but the judge in the first trial did not believe Brown.
>  For the second trial, Brown was on the defense witness list, and defense counsel told the jury in opening statement: "[Defendant's] fiancée is Shannon Brown. You're likely going to hear from Shannon Brown Thursday morning."
>  [Batton] began his testimony by saying that on the day of the burglary (two and a half years before this testimony), he was living with Brown, "which she was my fiancée

7

at the time." [Batton] claimed Brown witnessed Wilkerson ask for help to retrieve his belongings from his girlfriend's house. The trial court had ruled Brown could testify to the conversation. The trial court had also expressed concern about the prosecutor's desire to impeach Brown with the first judge's finding that Brown lacked credibility in claiming juror misconduct in the first trial. The court would allow some questions but was concerned that this jury not learn the first jury found [Batton] guilty.

On cross-examination, [Batton] acknowledged, "I referred to her as my ex-fiancée, yes." They had known each other and been engaged for only a few months when the burglary occurred. The prosecutor asked what changed the relationship after [Batton's] arrest. The defense objected the question exceeded the scope of direct examination, which had ended with [Batton's] arrest. The court allowed the question as going to [Batton's] credibility, and hers if she testified, and if she did not testify, "we might be able to revisit this." [Batton] testified, "me and Shannon are not together anymore." Over defense objection, the court allowed the prosecution to ask whether [Batton] was still in contact with Brown. [Batton] said that, other than receiving an occasional e-mail from her asking how he was doing, "only because she was coming to court," he was not in contact with her. She had moved out of her godmother's house, and [Batton] did not have her current telephone number and had not talked to her for months. He acknowledged she e-mailed him a couple of months earlier that she loved him. The court allowed this as going to potential bias. [Batton] admitted he called Brown in late June 2012 about her coming to court to testify (trial started the end of July 2012), but said he did not tell her "exactly what to come and testify about."

The defense moved for a mistrial or, in the alternative, to strike [Batton's] testimony about his relationship with Brown and admonish the jury to disregard it. The defense argued the prosecution exceeded the scope of direct examination and improperly used [Batton] to impeach Brown before she took the witness stand. The defense viewed this as a Fifth and Fourteenth Amendment violation in that the prosecution could not call [Batton] as a rebuttal witness. The prosecutor countered his questions were within the scope of direct examination because [Batton] had discussed his relationship with Brown on direct examination, and the questions related to [Batton's] statements in recorded jailhouse phone calls with Brown that the prosecutor intended to introduce through Brown or a district attorney's investigator.

The trial court denied the mistrial motion, concluding [Batton's] relationship with Brown was part of his direct testimony, and it was therefore within the scope to ask about the current status of the relationship. The court added, "in a sense [the prosecutor] was anticipating what Ms. Brown might testify to by using the defendant as an impeachment witness, so to speak. We don't really know if that's the case for sure. But it is something that I will anticipate Ms. Brown will testify to." Even though the prosecutor could not call [Batton] as a rebuttal witness, there were other ways the evidence could have been adduced. The court said there may be an issue with having the jury hear "imprecise recollection[s]" by [Batton], going to his credibility, but the trial thus far was not so affected by unfairness as to warrant a mistrial or strike the testimony. The court added there was no federal or state constitutional violation.

8

The next day, the defense stated it made a tactical decision not to call Brown as a witness, in light of the contents of the recently-transcribed jailhouse calls between her and [Batton]. The defense renewed its motion for mistrial. The court noted it had denied the motion in part on the assumption Brown would testify and invited comment from the prosecutor. The prosecutor said [Batton's] testimony on direct examination, that Brown used to be his fiancée, conflicted with the recent jailhouse conversations between [Batton] and Brown, which the prosecutor had recently received but which had not yet been transcribed when [Batton] testified. The primary purpose of the questioning, said the prosecutor, was to attack [Batton's] credibility.

The trial court again denied the defense motion for mistrial. Questions about [Batton's] ongoing relationship with Brown was "fair game" within the scope of direct examination, and it was fair game because Brown was supposed to testify. The court said there was no "scope violation," but even if there were, the trial had not been so infused by unfairness as to violate [Batton's] right to a fair trial. The court declined to strike the testimony but stated it would not allow the prosecutor to adduce evidence of the most recent jail call which, now that Brown would not be testifying, was an ancillary collateral matter.

Over defense objection, the trial court also ruled the prosecutor could argue to the jury that the defense has failed to produce Brown as a logical witness.

Over defense objection, the trial court allowed the prosecution to present brief rebuttal testimony from the district attorney's investigator, who testified to Brown's telephone number and jailhouse phone logs showing [Batton] called that number from jail about 25 or 30 times in the last two weeks. The court did not allow the prosecutor to play the recordings.

*Batton*, 2015 WL 7307330, at *3-4.

Batton contends, as he did on direct appeal, that the trial court violated the laws of California evidence when it allowed the prosecution to impermissibly exceed the scope of cross-examination and erroneously admitted the rebuttal evidence. Here, the appellate court found that the trial judge did not abuse its discretion with respect to its evidentiary rulings on the scope of cross-examination and the admissibility of rebuttal evidence:

There was no improper cross-examination. [Batton] testified Brown was an eyewitness to Wilkerson's supposed story that he and his girlfriend had just broken up and he needed [Batton's] help to retrieve his own property from her house. The defense listed Brown on its witness list and told the jury she would testify. On direct examination [Batton] twice testified Brown was his "fiancée at the time." [Batton] thus set the stage for an impartial exculpatory witness.

9

> The prosecutor was entitled on cross-examination to explore the relationship between [Batton] and Brown, to explore the implication that she was impartial. Since [Batton] volunteered on direct examination that she was his fiancée "at the time," he opened the door to inquiry on the subject of their relationship and its continuing existence. In light of the fact that [Batton] on direct examination asserted that the two were engaged to be married at the time of the pertinent conversation and based on [Batton's] inclusion of Brown on his witness list, and also considering the fact that the prosecutor would not be able to recall [Batton] on the subject once his testimony was concluded, it was fair game to ask if the two remained engaged at the time of trial. Strategically, the prosecutor was going to be able to capitalize on [Batton's] answer, whether it was "yes" or "no." If [Batton] testified they were still engaged it would call into question the credibility of Brown if, as the parties anticipated, she testified in the defense case. If [Batton] said that they were no longer engaged and attempted to distance himself from her (as he did) in order to bolster her testimony, the prosecutor then could present evidence to counter that argument by showing how often [Batton] and Brown had spoken since the date of [Batton's] arrest. Once [Batton] lied about how often he had been in touch with Brown, the prosecutor was entitled to pin down those lies in anticipation of the prosecution's evidence that the two had communicated often and recently, thus attacking [Batton's] credibility as a witness. And, clearly, the prosecutor did not raise a collateral matter merely for the purpose of contradicting it, because at that time everyone expected Brown to testify as a defense witness.
> 
> Nor does [Batton] show the trial court abused its discretion by permitting rebuttal evidence that he telephoned Brown from jail 25 to 30 times in the last two weeks. It was clearly probative as to [Batton's] credibility and did not consume much time, taking up only four pages of reporter's transcript.
> 
> We conclude [Batton] fails to show evidentiary error regarding [Batton's] contacts with Brown. Since there was no error, we need not address [Batton's] arguments about prejudice.

*Batton*, 2015 WL 7307330, at *5.

This Court must defer to the state appellate court's determination of state law. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000). Thus, state law was not violated by the admission of the evidence. Indeed, to the extent that Batton asserts an error under California evidentiary law, such claim is not cognizable on federal habeas review. The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62,

72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Moreover, Batton cannot show that the admission violates federal due process. "'The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.'" *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995)); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991) (proper analysis on federal habeas review is "whether the admission of the evidence so fatally infected the proceedings as to render them fundamentally unfair"). "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." *Holley*, 568 F.3d at 1101 (9th Cir. 2009). "Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id.* (citing *Williams*, 529 U.S. at 375). Absent such "clearly established Federal law," it cannot be concluded that the appellate court's ruling was an "unreasonable application." *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a claim, a federal court cannot find a state court ruling unreasonable). Batton is therefore not entitled to relief on this claim.

ii. Admission of prior convictions for residential burglary

The Court of Appeal considered and rejected on direct appeal Batton's challenge to the admission of his prior convictions as follows:

> [Batton] argues the trial court abused its discretion by allowing the jury to hear about his two prior burglary convictions, in violation of his Fourteenth Amendment right to due process and a fair trial. We see no reversible error.
>
> The parties submitted cross-motions in limine on admissibility of evidence of defendant's dozen prior convictions—ranging from a 1979 misdemeanor auto theft to a 2009 misdemeanor drug offense, burglary convictions in 1981 (second-degree), 1984 (first-degree with defendant serving as lookout), 2001 (first-degree), and 2003 (second-degree burglary)—plus several parole violations. The prosecutor sought to use the prior record as crimes of moral turpitude impeaching [Batton's] credibility. The prosecution also sought to use the 1984 and 2001 residential burglary convictions to prove intent and absence of mistake under Evidence Code section 1101, subdivision (b), refuting [Batton's] testimony that he thought he was just helping someone retrieve his own property from a girlfriend's house. [Batton] argued the evidence was improper propensity evidence and some was remote.
>
> On appeal, [Batton] cites the judge's evidentiary ruling from the first trial, which we disregard. The judge in the second trial at issue in this appeal ruled the three burglary convictions were crimes of moral turpitude presumptively admissible for impeachment. The court also ruled the jury could learn the prior convictions were for burglaries, because the highly probative value of the evidence under Evidence Code section 1101, subdivision (b), outweighed the potential for undue prejudice under Evidence Code section 352.
>
> The court instructed the jury with CALCRIM No. 316: "If you find that a witness has been convicted of a felony, you may consider that fact only in evaluating the credibility of the witness's testimony. The fact of a conviction does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable."
>
> The court also instructed the jurors with CALCRIM No. 375, that if they found defendant committed the prior residential burglaries, "you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: [¶] The defendant entered a residence with the intent to commit theft. [¶] . . . [¶] Do not consider this evidence for any other purpose except for the limited purpose of deciding whether the defendant entered a residence with the intent to commit theft. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of first degree burglary. The People must still prove each charge beyond a reasonable doubt."

*Analysis*

The California Constitution provides that "[a]ny prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding . . . ." (CAL. CONST., art. I, § 28, subd. (f)(4).) The use of prior convictions for impeachment remains subject to the trial court's discretion under Evidence Code section 352. (*People v. Clark* (2011) 52 Cal.4th 856, 931.) In exercising its discretion to admit prior convictions for impeachment, the trial court is guided by four factors: (1) Whether the prior conviction reflects on honesty and integrity; (2) whether it is near or remote in time; (3) whether it was incurred for the same or substantially similar conduct for which the witness-accused is on trial; and (4) what effect admission would have on the defendant's decision to testify. (*Ibid.*, citing *People v. Beagle* (1972) 6 Cal.3d 441, 453.)

[Batton] finds fault with respect to the second and third factors.

He argues the 1984 and 1999 residential burglary convictions were remote. However, remote convictions are not automatically inadmissible for impeachment purposes and are admissible when the defendant has not led a "legally blameless life" since the conviction. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 926 [allowed impeachment with 18–year–old prior conviction].) [Batton's] 1984 residential burglary was his second conviction for residential burglary, the first being in 1981. Among [Batton's] other convictions were misdemeanor auto theft in 1989; misdemeanor domestic violence in 1990; the 1999 residential burglary conviction; the 2003 commercial burglary; misdemeanor drug convictions in 2008 and 2009; and the instant offense in January 2010. [Batton's] continuous life of crime justified use of the 1984 and 1999 convictions.

As to the third factor of similarity of crimes for impeachment purposes, [Batton] argues the similarity of the prior residential burglary convictions to this residential burglary prosecution prejudiced him, and the trial court should have sanitized the convictions or used his convictions for other offenses. However, the nature of the prior residential burglary convictions was separately admissible for the independent purposes of intent and absence of mistake.

Thus, Evidence Code section 1101, while generally restricting character evidence to prove conduct on a specified occasion, provides in subdivision (b): "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." A trial court's decision to admit evidence under Evidence Code section 352 is reviewed for abuse of discretion. (*People v. Mendoza* (2007) 42 Cal.4th 686, 699.)

[Batton], a grown man, tried to convince the jurors that a teenaged acquaintance duped him into participating in a residential burglary—i.e., that [Batton] lacked intent to commit burglary and his involvement was a mistake. His prior residential burglary convictions had high probative value to disprove his story.

> [Batton's] only argument about Evidence Code section 1101 in his opening brief is that the prosecutor committed prejudicial misconduct by using the prior convictions as propensity evidence. We reject this claim, post.
>
> [Batton] contends admission of the evidence violated due process by making the trial fundamentally unfair. He claims "[t]here can be little doubt" the jury improperly used the prior convictions as propensity evidence, and the jury instructions forbidding such use "required mental gymnastics that no juror could reasonably perform." We disagree. [Batton] cites *Shepard v. United States* (1933) 290 U.S. 96 [78 L.Ed. 196], which found the trial court prejudicially erred in allowing as a dying declaration the murder victim's hearsay statement accusing the defendant of poisoning her. The statement did not qualify as a dying declaration, because it was made several weeks before death, at a time when the victim's health was improving. (*Id.* at p. 99.) The intermediate appellate court held the statement was admissible on other grounds—to refute defense evidence that the victim was suicidal. (*Id* at p. 102.) The high court rejected that alternative theory because the evidence had not been offered or received for that narrow purpose at trial, and that theory would be unlikely to occur to the minds of jurors uninstructed on that narrow purpose. (*Id.* at pp. 102–103.) [Batton] cites *Shepard* for its statement that the purported distinction between uses of the evidence was "a feat beyond the compass of ordinary minds" to limit the purpose of the evidence. (*Id.* at p. 104.)
>
> *Shepard* affords [Batton] no help in his appeal, because here the evidence was offered and received for the specific narrow purpose, and the jury was instructed on that narrow purpose.
>
> [Batton's] reply brief quotes from respondent's brief—which merely reiterated the prosecutor's point about the implausibility of the mature, experienced burglar being duped into a burglary by a teenager. [Batton's] reply brief then cites several law review articles about scientific studies of mock juries. We disregard this new argument and authority raised for the first time in the reply brief. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn.10.)
>
> We conclude there was no evidentiary error.

*Batton*, 2015 WL 7307330, at *5-8.

Batton fares no better on federal habeas review.[2] First, to the extent that he argues that the admission of his prior convictions violated state law, again Batton is not entitled to habeas

---

[2] Because Batton testified at trial and was impeached with his prior convictions, his challenge to the court's ruling on that issue is cognizable on federal habeas review. *See Luce v. United States*, 469 U.S. 38, 48 (1984) (holding that, in order to present an objection to a trial court's ruling that a prior conviction could be admitted, a defendant must actually testify at trial); *Galindo v. Ylst*, 971 F.2d 1427, 1429 (9th Cir. 1992) (per curium) (applying *Luce* in the context of a habeas petition).

relief. *See Wilson v. Corcoran*, 562 U.S. 1, 4 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Estelle*, 502 U.S. at 67-68.

Moreover, Batton cannot show that the trial court's ruling violated his constitutional rights. Again, "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process." *Holley*, 568 F.3d at 1101. "Although the Court has been clear that a writ should issue when constitutional errors have rendered the trial fundamentally unfair [citation], it has not yet made a clear ruling that admission of irrelevant or overly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id.*

Similarly, to the extent Batton argues that the prior convictions inflamed the jury by suggesting Batton's propensity to commit the present crime, the United States Supreme Court has never held clearly that the introduction of propensity evidence violates due process. *See Estelle*, 502 U.S. at 75 n. 5 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"); *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (rejecting habeas petitioner's challenge to propensity evidence, where petitioner could point to no Supreme Court precedent establishing that admission of otherwise relevant propensity evidence violated the Constitution).

In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal

15

rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Because the Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, Batton's challenge to the admission of his prior convictions also must fail.

B.     *Prosecutorial Misconduct* (Ground 3)

Batton further claims that the prosecutor committed misconduct through questions and argument going to propensity and bad character. The Court of Appeal laid out the following background to this claim:

> Assuming for the sake of argument that none of these points were forfeited by failure to object, as asserted by the People, [Batton] fails to show grounds for reversal.
> The prosecutor cross-examined [Batton] about the two prior residential burglaries. In one, he stayed outside as the lookout. In the other, he went into the house and took a television. The prosecutor asked: "How many times have you burglarized a residence? Not just got caught, but how many times have you done it?" The trial court sustained the [Batton's] unspecified objection. The prosecutor argued it went to [Batton's] state of mind. The court ruled, "No. I'm not going to make him answer that question. He has a privilege not to incriminate himself if he has done anything like that. I don't know that he has, but he needn't answer that particular question."
> The prosecutor next asked, "So you're telling this jury that you've [committed burglaries before] [b]ut in this case you basically got duped into committing a burglary by this guy you described as a young guy?" The trial court sustained an objection that the question was compound, overruled objections to reframed questions but asked [Batton] if he understood them until the prosecutor moved on after eliciting only [Batton's] claim he had no idea it was a burglary. The prosecutor later returned to the subject, asking if, "despite your experience with this very type of crime, nothing ever raised your suspicions about any of this on this day, until the police showed up[?]" [Batton] said that was correct.
> The prosecutor later probed [Batton's] testimony that he committed the prior burglaries when he was a "youngster" 19 or 20 years old, whereas he was now 51. [Batton] testified, "back then I was younger than what I am now, and I was into that life,

16

you know what I mean. Street life. And yes. And now by me being an older gentleman, no, I'm not prone to go out and do burglaries, you know what I mean." The prosecutor asked, "But you've been around for a long time in that life, right? You're saying it was a previous—that it was when you were younger. That was a long stretch." The trial court sustained the defense objection that this was "straight up propensity evidence."

In closing argument, the prosecutor told the jury [Batton] "just couldn't be more guilty of the crimes that he's charged of—charged with." The defense did not object but did object on propensity grounds when the prosecutor said, "They were there for a purpose. They were going to get everything they could get, all the valuables they could get . . . . [¶] Mr. Wilkerson wasn't in there doing that himself. [Batton], with his background, was in there doing it." Over [Batton's] propensity objection, the trial court ruled the argument fair, in light of the court's Evidence Code section 1101, subdivision (b), ruling.

*Batton*, 2015 WL 7307330, at *8.

To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional claim. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). A prosecutor's comments in summation constitute grounds for reversal only when the remarks caused actual prejudice. *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to claim of prosecutorial misconduct in summation).

None of the prosecutor's comments now challenged by Batton were sufficiently egregious to rise to a constitutional claim or cause actual prejudice. As the Court of Appeal reasonably concluded in rejecting this claim:

> [Batton] claims the prosecutor's question about uncharged burglaries suggested the prosecutor had knowledge there were some, and the court's comment did not disabuse the jury of this possibility. And he claims he was prejudiced by the prosecution's reference to his long stretch of criminality. We disagree. The trial court

17

sustained defense objections and instructed the jury to ignore any question to which the court sustained an objection. We presume the jurors followed the instruction.

As to the prosecutor's closing arguments, the prosecutor did not argue that [Batton] "couldn't be more guilty" based on his prior criminal history, as [Batton] asserts on appeal. The prosecutor's latter remark that Wilkerson was not acting alone and [Batton] "with his background, was in there doing it" was permissible argument that [Batton] was lying when he claimed he had no idea he was aiding a burglary. Moreover, the prosecutor made clear he was not urging the jury to find [Batton] guilty based on propensity. The prosecutor reminded the jury of the special instruction about the prior convictions and said: "I can't emphasize enough that it isn't like, um, you know, a residential burglary happened in his neighborhood, so he probably did it. It's not that. It's given all the circumstances, the law recognizes that when he's up here claiming that I didn't know a burglary was happening, that it's so important to consider that he's done two burglaries before. [¶] When you're assessing his credibility in deciding whether he really believed that he had a right to be over there, his prior burglary convictions are really important to consider. Because not only has he—is he caught red-handed at the scene, when he says, 'Oh, I didn't know this was a burglary,' well, this isn't—you're not some young naïve guy. I mean, you've been convicted of multiple residential burglaries before. [¶] So it goes to show that that story—and I'm going to get into details of the story and how it's obvious that it's completely bogus in its own right. But his background even shows that that's not believable. Okay. [¶] So [Batton's] testimony. He says that he went to [the victim's] house with a virtual stranger to help take property, but he didn't ask any questions, he didn't have any idea what he was going to take, or where he was going to take it. He didn't know this guy hardly, Demetrius Wilkerson. He didn't know where he was going. He didn't know why he was going. He didn't know where he was going to take anything. All these things, again, considering his background. Okay. He is not a naïve kid. He knows. All right. [¶] He says he took property, but he never entered the house. He even goes so far as to say he never crossed the plane of the sliding glass door. And all that is, is just [Batton] knowing—he knows what residential burglary is about. He knows the law of residential burglary. You know, he's been convicted of it twice. [¶] He—and he—you know, I don't know if you guys all remember or not, yesterday when he said that Demetrius Wilkerson reached out outside the plane of the sliding glass door, it's pretty unusual language. Well, it's straight from the jury instruction that you just heard saying that you have to enter the residence, and just going inside, reaching in past a window screen is entering a residence. So he was real careful to say he didn't break the plane of the house. Okay? [¶] It's just—he's a hustler."

The prosecutor's arguments were fair comment on the evidence to prove intent and disprove [Batton's] claim of mistake. And, as indicated, the jury was properly instructed that the prior burglary convictions could be considered only in evaluating credibility, "for the limited purpose of deciding whether or not the defendant entered a residence, as charged here, with the intent to commit theft."

There was no prejudicial prosecutorial misconduct.

*Batton*, 2015 WL 7307330, at *9-10.

That conclusion is both reasonable and fully supported by the record. Accordingly, the Court cannot find the state courts' denial of Batton's prosecutorial misconduct claim unreasonable or contrary to federal law, and Batton is not entitled to relief on it.

C. *Cumulative Error* (Ground 4)

Finally, Batton avers that the cumulative effect of the trial errors warrants reversal of the judgment against him. "While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness." *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers v. Mississippi*, 401 U.S. 284, 298, 302-03 (1973)). Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation omitted). In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process. *See Chambers*, 401 U.S. at 294. As discussed throughout this opinion, however, Batton does not allege any claims that amount to error, and thus he demonstrates no errors that can accumulate to a level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). Accordingly, Batton is not entitled to relief on his cumulative error claim.

V. CONCLUSION AND ORDER

Batton is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 8, 2018.

                                                    /s/James K. Singleton, Jr.
                                                   JAMES K. SINGLETON, JR.
                                                 Senior United States District Judge